# United States Court of Appeals
## For the First Circuit

No. 09-1247

OLGA E. AGUSTY-REYES; ARMANDO RIVERA CABALLERO,

Plaintiffs, Appellants,

v.

THE DEPARTMENT OF EDUCATION OF THE COMMONWEALTH OF PUERTO RICO;
MIGUEL HERNÁNDEZ-CRUZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Enrique J. Mendoza Méndez with whom Mendoza Law Offices were on brief for appellants.
Rosa Elena Pérez-Agosto, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia M. Casalduc-Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief for appellee Department of Education of the Commonwealth of Puerto Rico.

April 6, 2010

**LYNCH**, **Chief Judge**.  Taking all inferences in her favor for purposes of summary judgment, Olga E. Agusty-Reyes ("Agusty") was repeatedly sexually harassed by her supervisor at a Puerto Rico primary school where she taught fourth and sixth grade mathematics between August 2005 and January 2007.  After Agusty refused his advances, the supervisor delayed evaluating her and ultimately gave her a poor evaluation to block her receipt of tenure.  When she complained to her supervisor's supervisor at the Commonwealth's Department of Education ("DOE"), she was not told of the DOE's sexual harassment policy; she was instead told the only remedy she had was to file a union grievance.  Soon after she did so, the supervisor attacked her, forcing her into his lap and sexually assaulting her until her screams brought school security to her rescue.  The supervisor was later arrested for the attack.  When she complained again to the DOE that the ongoing harassment had now led to a criminal attack, the DOE held a hearing on her harassment claims against the supervisor without giving her notice or opportunity to testify or to respond to his denials, apparently in accord with its policy.  After these proceedings, the DOE reinstated the supervisor.  Only the intervention of the police, enforcing a protective order from the local court, prevented him from returning to the school where she worked.

In light of the evidence and these inferences, the district court erred in granting the DOE's motion for summary

-2-

judgment on Agusty's claims. See Agusty-Reyes v. Dep't of Ed., No. 07-1968 (D.P.R. Jan. 8, 2009). We reverse and remand this case for proceedings consistent with this decision.

## I.

Agusty and her husband, Armando Rivera-Caballero, sued the DOE in October 2007. They claimed discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., as well as various provisions of Puerto Rican law. They sought damages, declaratory and injunctive relief, and attorney's fees.[1] Plaintiffs appeal the district court's January 2009 grant of the DOE's motion for summary judgment.

The district court granted summary judgment based on its determination that a reasonable factfinder could only reach three conclusions. First, that the evidence compelled the conclusion that Agusty had not suffered a tangible employment action because ultimately she was given tenure, and the DOE was therefore entitled to assert the Faragher-Ellerth affirmative defense. This defense precludes an employer's vicarious liability for a supervisor's harassment that did not result in a tangible employment action when the employer can show both that it acted reasonably to prevent and

---

[1] Plaintiffs also named the supervisor as a co-defendant. Their claims against him were dismissed, because Title VII does not create liability against individual employees. See Fantini v. Salem State Coll., 557 F.3d 22, 28-31 (1st Cir. 2009). The dismissal has not been challenged; this appeal concerns only the grant of summary judgment on Agusty's claims against the DOE.

correct sexual harassment and that its employee unreasonably failed to avoid harm. Second, the court held that the evidence compelled the conclusion that the mere existence of a DOE policy on sexual harassment and the DOE's statement it had complied with aspects of that policy satisfied the first prong of that defense because the DOE had acted reasonably. Indeed, the court emphasized the reasonableness of the DOE's response when confronted with the "relatively minor wrongdoing" that preceded the criminal attack. Third, the court held that the evidence compelled the conclusion that the second prong of the affirmative defense was satisfied because Agusty had been unreasonable in not filing a formal written complaint until after she was attacked (although Agusty had previously met with the DOE's Regional Director to complain about the supervisor's harassment and had been told to file a union grievance, which she did).

Each of these conclusions was error under the summary judgment standard.

## II.

On review of summary judgment, facts are taken in the light most favorable to Agusty, the nonmoving party. Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir. 2008).

The DOE has employed Agusty as a public school teacher since 2002. In August 2005, she was transferred to the Fortuna Playa Public School ("Fortuna School") in Luquillo, Puerto Rico, to

-4-

teach fourth and sixth grade mathematics. At that point, Agusty was in the midst of a two-year probationary period, which had started in August 2004. During this period she was subject to evaluation by her direct and immediate supervisor; at the Fortuna School, her supervisor was School Director Miguel Hernández-Cruz ("Hernández").

Under Puerto Rican law, public school teachers are entitled to tenure once they have completed a two-year probationary period and have, "in the opinion of the [DOE], performed satisfactory work." P.R. Laws Ann. tit. 18, § 214. Once tenured, teachers are governed by special regulations, id. § 216, and are "entitled to be contracted as permanent teachers in the municipality where they may be teaching," id. § 214. Agusty sought tenure while under Hernández's supervision.

Under DOE policies, as Agusty's supervisor, Hernández was responsible for conducting regular evaluations of Agusty's performance. He was directed to complete these evaluations once per semester. Hernández was also required to discuss each evaluation with Agusty before forwarding them to the DOE's Deputy Secretary of Human Resources. The Deputy Secretary would review and assess the evaluations before determining whether to grant Agusty permanent status as a tenured DOE teacher.

The DOE had also established an official policy for reporting and investigating sexual harassment allegations,

Regulation 4661. Under that policy, victims of sexual harassment can file complaints with the DOE's Office for the Investigation of Administrative Complaints ("IAC") or before a designated Regional Coordinator. The IAC is responsible for notifying accused harrassers of the allegations against them and forwarding complaints to senior DOE officials to take "provisional measures" pending the adjudication of the complaint. The IAC is also charged with filing a report about the complaint with the DOE's Legal Division, which in turn refers the report to an administrative judge "to adjudicate the controversy and recommend disciplinary and corrective action." There is no evidence that the DOE publicized this policy to its employees or informed Agusty or her supervisor of it.

Agusty alleges that Hernández sexually harassed her from the moment they met. He made numerous sexually charged comments to her, described how "pretty" she was, and took opportunities to be in physical contact with her and to look into her classroom to see her. Hernández insisted all meetings with Agusty take place in private and told her he would give her a good evaluation if she would "touch him." This harassment was frequent and blatant. Agusty's colleagues, students, and students' parents observed and commented on Hernández's behavior. When Agusty declined his advances, Hernández sent her "intimidat[ing]" memos in which he

claimed "he would destitute" her and called her "dumb" and insubordinate.

In May 2006, with the end of her two-year probationary period pending and having received no evaluations from Hernández, Agusty asked him for a copy of her semesterly evaluation, which was long overdue. Hernández replied that he did not have a copy and that she would have to request one from the DOE's human resources office. When she did so, the office told her that it had never received her evaluation from Hernández. There is no evidence that Hernández had prepared such an evaluation as he was required to do.

Agusty complained to DOE officials senior to Hernández. After several months of trying to arrange a meeting, on September 12, 2006, Agusty met with the DOE's Regional Director, Héctor Medina Delgado and reported all of Hernández's actions up to that point. Delgado offered Agusty no help; instead he told her "to go seek help from the Teachers Federation" ("the union"). He did not inform her of the DOE's sexual harassment policy, nor did he direct her to submit an administrative complaint. One can infer he was either unaware of the policy or its requirements or deliberately misled her. Indeed, the only immediate action Delgado took in response to Agusty's meeting was to send Hernández a letter, that same day, explaining that his office had received no evaluations of Agusty's teaching performance and urging Hernández to perform and submit the required evaluation "as soon as possible."

Agusty followed up on her meeting with Delgado in a letter, dated September 25, 2006; she copied Hernández, a representative of the union, and individuals identified as "Superintendent" and "Secretary Department of Education." The letter explicitly referred to Hernández's "inappropriate conduct" toward her. The letter also referenced the September 12 meeting and stated that Agusty had later provided Delgado with a copy of a document, drafted and signed by her supervisor, Hernández. The document from Hernández, apparently in response to Agusty's request that she be evaluated, stated that she had not met "the percentage required in [her] summative evaluation and that she "had presented . . . shady behavior."

Agusty's letter further reported an incident during the week of September 18, 2006, in which Hernández gave Agusty a note about the probationary period that made her "feel intimidated again." Agusty stated that she had still not seen a copy of her evaluation, and asked for "an authentic evaluation according to the parameters established by the Department of Education." She also stated that if Hernández continued his "inappropriate conduct toward [her] person," she would take additional action. Delgado took no action on the letter and made no further inquiry into Hernández's continuing inappropriate behavior.

On September 27, 2006, Hernández finally submitted Agusty's formal evaluation to the DOE for the whole period of her

employment. He gave her an overall rating of 53 percent, which placed her in the lowest of five possible categories, indicating "deficient professional performance." Although Hernández was required to discuss the evaluation with Agusty, he did not do so. He also failed to break down Agusty's assessment by semester. And despite Agusty's many earlier requests to see her evaluation, he did not provide her with a copy. Agusty first became aware of the evaluation and its contents on November 16, 2006, when she and a union representative met with Hernández.

On December 7, 2006, Agusty filed a formal "Step I" complaint with the union, as she had been advised to do by the DOE Regional Director, Delgado. She sent copies of her complaint to the DOE and to Hernández. In her complaint, Agusty alleged that Hernández had made and continued to make "sexual overtures" toward her, had "harass[ed]" her "from the work standpoint," and had failed to evaluate her "in any diagnostic or formative manner." The complaint petitioned for Hernández to "cease and desist in harassing [Agusty] sexually and on the job," for his assessment of her to be revised and "checked against [her] evidence," and for her to "be evaluated by an impartial party." Hernández denied the complaint, calling it "frivolous." The Regional Director, Delgado, apparently did not notify other DOE officials of the sexual harassment allegations or advise Agusty to file a complaint under the formal sexual harassment policy.

The DOE took no action in response to Agusty's complaint through the union.  About two weeks later, Agusty filed a "Step II" complaint with the union reiterating her concerns, including the harassment allegations and petition for relief.  Again the DOE did nothing.  The complaint was again copied to Hernández, who refused even to accept the document.

Instead, after Agusty had formally accused him of harassment, Hernández intensified his harassment of Agusty.  At some point after the second complaint was filed, Hernández sent Agusty a memo containing false accusations against her.  Agusty sought guidance from a union representative, who advised her she had to respond to Hernández's allegations.

On the morning of January 19, 2007, Agusty went to Hernández's office to deliver a response to his memo.  At that point, he pulled her down, forcing her to be seated on his lap, and began to "touch her intimate parts."  Agusty "screamed asking for help and kicking."  A security guard, typist, and several parents heard her screams and cries for help and came to her assistance.  They found Agusty in Hernández's lap with her back toward him and his hands on her shoulders.  The police arrived at the school soon afterward.

Later that morning, Agusty went to the Luquillo police department to file a sexual assault complaint.  That same day, she obtained a protective order in a Puerto Rico district court.

Agusty ultimately filed criminal charges against Hernández with the Puerto Rico Police Department; a judge found probable cause for Hernández's arrest on charges of lascivious acts, set bail at $10,000, and ordered him to wear an electronic monitoring device.

The local court repeatedly renewed Agusty's protective order over the ensuing months.[2] Although the order's restrictions varied over time, it always barred Hernández from Agusty's home and those of her relatives.

On January 22, 2007, Agusty filed a formal sexual harassment complaint with the DOE's IAC, pursuant to Regulation 4661. The complaint described Hernández's seventeen months of harassment of Agusty, from her first days of work and up through the January sexual assault. That same day, the DOE ordered Hernández to report to a professional development center. On January 23, 2007, the DOE formally suspended him, with pay, from the Fortuna School. Along with his notice of suspension, Hernández was informed of a forthcoming administrative hearing, at which he would "have the right to state [his] version and to show cause why [he] should not be dismissed." The victim, Agusty, received no notice of the hearing. Delgado, the Regional Director, did receive notice but did not inform Agusty.

---

[2] The protective order was to remain in force pending the resolution of criminal proceedings against Hernández. It was still in effect as of April 14, 2008.

-11-

In the weeks before the hearing, the IAC investigation unit prepared its report. An investigator reviewed Agusty's written complaint but apparently did not interview her. The investigator also spoke with or reviewed statements by two teachers, several students, Hernández's assistant, and the security guard who witnessed the end of the incident on January 19, 2007. The investigator apparently never obtained, or even looked at, the police report or court records. A jury could find the investigation was cursory. Still, there was some confirmation of Hernández's particular attentions to Agusty; there was also confirmation of Agusty's screams for help and that she was found screaming in Hernández's lap, had to be helped out, and, from her appearance, was in shock.

The DOE hearing was held on February 21, 2007. Although the proceeding was purportedly intended to assess the merits of her claim, Agusty was not informed of the hearing and did not attend. It can be reasonably inferred from this that the DOE's official policy on sexual harassment complaints was to afford a hearing to the alleged harasser but not to take testimony from the individual who claimed harassment and instead to rely on the original written complaint. Hernández was present and represented by counsel.

The examining officer reviewed documentary evidence, including Agusty's complaint, the investigator's report, and the statements the investigator reported had been made by staff and

students at the Fortuna School, on which the report had relied. This documentary evidence was provided to Hernández and his attorney before the hearing.[3] Hernández's counsel made arguments in his defense, and Hernández offered extensive testimony on his own behalf.[4] Hernández also submitted sworn statements from six teachers at the Fortuna School, vouching for his professional conduct.

Based solely on the evidence presented at this ex parte proceeding, the examining officer prepared a report recommending that the disciplinary action be dismissed. The examining officer reached his conclusion because, having "had the opportunity of listening to [Hernández's] evidence," he considered Hernández's version of events--the only version presented by testimony at the hearing--"worthy of our full credibility." By contrast, the examining officer considered Agusty's written statement not credible, observing (without further explanation) that it

---

[3]    The DOE did not put the vast majority of the exhibits reviewed by the examining officer into the record on appeal. These exhibits were also not presented before the district court. As a result, a variety of potentially significant documents that were made available to the examining officer, including letters supposedly sent by Hernández to Agusty on November 27, 2006, and January 18, 2007, and evaluations of Agusty's performance before her arrival at the Fortuna School, are not before us.

[4]    Hernández's defense was that he had never mistreated Agusty and that she had "fabricated" the sexual harassment complaint in response to his negative evaluation of her performance.

-13-

"denote[d] an attitude of getting even against [Hernández] for the negative evaluations."

The DOE's legal division reviewed the examining officer's report and, in early August 2007, recommended the dismissal of the disciplinary action against Hernández.  There is no indication that the legal division conducted an independent review of the evidence, nor did the DOE give Agusty an opportunity to testify.  This is consistent with Regulation 4661, which does not provide for review of the adjudicator's decision nor identify any opportunities for alleged victims of sexual harassment to present their version of events once they have submitted their complaints.

Shortly thereafter, the DOE reinstated Hernández as director of the Fortuna School, effective August 10, 2007.  With his return looming, Agusty's protective order was expanded on August 20, 2007, to prohibit Hernández from entering Agusty's place of employment, the Fortuna School.  When Hernández returned to the Fortuna School, where Agusty was working, he was detained by police officers for violating the protective order.  In light of the order, the DOE referred Hernández for transfer to another school.

Following Hernández's transfer, Agusty was re-evaluated by new supervisors at least twice, on April 21, 2007, and May 21, 2007.  She received ratings of 86 percent and 94 percent overall, which placed her in the second-highest category, reflecting "superior professional performance."  On the basis of these

-14-

evaluations, Agusty was awarded tenure on November 9, 2007, retroactive to August 2006.

III.

We review the district court's grant of summary judgment de novo. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007). We affirm only if there is no genuine issue as to any issue of material fact and the movant is entitled to judgment as a matter of law. Id. The record viewed in the light most favorable to Agusty presents issues of material fact on Agusty's hostile work environment and retaliation claims under Title VII.

A.        A Reasonable Jury Could Find That Agusty Suffered Sexual
          Harassment Amounting to a Hostile Work Environment

Agusty's first Title VII claim is that the DOE is liable as her employer for the alleged sexual harassment by Hernández, her direct supervisor.[5] In particular, she claims that Hernández's longstanding abuse created a hostile work environment and sets forth facts that would support a quid pro quo claim as well.

We have described six elements that plaintiffs must establish to succeed on hostile work environment claims against their employers.[6] See Valentín-Almeyda v. Municipality of

_____

[5]     The Supreme Court has read Title VII to include sexual harassment as a form of gender discrimination under certain circumstances. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); see also Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 31 (1st Cir. 2003).

[6]     The six elements are:

-15-

Aquadilla, 447 F.3d 85, 94 (1st Cir. 2006). The district court correctly found that Agusty could establish all of the elements of an abusive work environment except for a basis for employer liability. On appeal, the DOE attempts to argue that the court erred in finding Agusty could show mistreatment that was "severe or pervasive." A reasonable jury could undoubtedly find that the seventeen months of abuse by Hernández chronicled in the summary judgment record was sufficiently severe and pervasive for a sexual harassment claim under Title VII. This case turns exclusively on the final element, whether there is a basis for employer liability.

The Supreme Court has articulated clear rules governing employers' liability for a supervisor's wrongdoing against an employee. These rules are designed "to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

policies of encouraging forethought by employers and saving action by objecting employees." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764 (1998).

When a supervisor's harassment of an employee results in a "tangible employment action against the employee," the employer is vicariously liable for the "actionable hostile environment created by [the] supervisor." Id. at 765; see also Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 43 (1st Cir. 2003). Tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761. "[T]he harassing supervisor must be the one who orders the tangible employment action or, at the very least, must be otherwise substantially responsible for the action." Lee-Crespo, 354 F.3d at 44. No defense of reasonableness is available. See Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 86 (1st Cir. 2006). This makes the question of whether the harassment by the supervisor resulted in a tangible employment action an important step in the analysis. If Hernández's actions could be found to have resulted in tangible employment action, the DOE would be liable, and no affirmative defense would be available.

Employers are also vicariously liable for a supervisor's "severe and pervasive" harassment that does not result in a tangible employment action; the difference is that in such

-17-

instances employers may be able to invoke a two-part affirmative defense. Ellerth, 524 U.S. at 765. This affirmative defense, the Faragher-Ellerth defense, requires a defendant employer to show both (1) "that its own actions to prevent and correct harassment were reasonable" and (2) "that the employee's actions in seeking to avoid harm were not reasonable." Chaloult, 540 F.3d at 66 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Ellerth, 524 U.S. at 765); see also Torres-Negrón v. Merck & Co., 488 F.3d 32, 40 n.5 (1st Cir. 2007); Arrieta-Colon, 434 F.3d at 86; 1 Barbara T. Lindemann et al., Employment Discrimination Law 1365-76 (4th ed. 2007).

The DOE argues that Agusty cannot show a tangible employment action and so it may claim the Faragher-Ellerth defense. In the alternative, the DOE argues that its sexual harassment policy, coupled with Agusty's not filing a formal complaint under Regulation 4661 until January 2007, satisfy Faragher-Ellerth's two prongs and entitle it to summary judgment on the basis of the affirmative defense.

On these facts, a reasonable jury could easily find that Agusty suffered a tangible employment action. This alone is sufficient for Agusty to survive summary judgment, as such a finding would render the Faragher-Ellerth defense unavailable to the DOE.

Beyond that, a reasonable jury could also find that the DOE failed to satisfy either or both prongs of the Faragher-Ellerth defense, even if no tangible employment action was present. A trier of fact could find that the DOE did not act reasonably to prevent and respond to instances of sexual harassment and also that Agusty acted reasonably to avoid further harassment. As a result, the DOE is unable to satisfy either prong of the defense at the summary judgment stage and was not entitled to judgment.

1.    Tangible Employment Action

The DOE asserts that Agusty has not suffered a tangible employment action since she "was never fired, demoted, or reassigned from her post" and ultimately received tenure, retroactive to August 2006. The argument misses the point.

The Supreme Court's list of tangible employment actions in Ellerth was not exhaustive, and it explicitly includes "failing to promote" and "a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761; see also Lee-Crespo, 354 F.3d at 43; Reed, 333 F.3d at 32-33. It is undisputed that, as Agusty's supervisor, Hernández was required to evaluate Agusty's performance as a teacher at specific times and that his evaluation played a pivotal role in the DOE's assessment of her eligibility for tenure. The record permits a finding that Hernández resisted evaluating Agusty for months and then gave her a dismal review when she refused to "touch him." By contrast, Agusty's later supervisor

-19-

gave Agusty two strong evaluations, whereupon she quickly received tenure.

On this record, there are several theories on which a jury could find Hernández's actions resulted in tangible employment actions. The grant or denial of tenure could be viewed as similar to a decision whether to promote, a well-recognized tangible employment action. A failure to grant tenure could also lead to a meaningful change in an employee's benefits in an up-or-out situation at a time when budgetary constraints loomed. Finally, a reasonable jury could certainly find that both Hernández's deliberate delay in evaluating Agusty's performance and his harshly critical assessment, which was directly linked to the tenure decision, adversely impacted Agusty's employment by delaying her receipt of tenure and the job security that would accompany it. See Ellerth, 524 U.S. at 761.

2.      The Faragher-Ellerth Defense

Even if there were not a jury issue on whether there had been a tangible employment action, the DOE was also not entitled to summary judgment on the basis of the Faragher-Ellerth defense. The DOE argues that (1) its sexual harassment policy and the remedial measures it took in response to Agusty's January 2007 complaint satisfy the first prong of the defense, and (2) Agusty's failure to use the established procedure until she filed that complaint in January satisfies the second. Both arguments clearly fail.

The Faragher-Ellerth defense was designed to protect only those responsible employers who have established effective sexual harassment policies and responsive grievance processes. Id. at 764-65. To that end, an employer must carry its burden on both prongs to succeed in maintaining the defense. Faragher, 524 U.S. at 805; Arrieta-Colon, 434 F.3d at 86. We assess the DOE's claims on each prong of Faragher-Ellerth independently, "recognizing that there may be a relationship between the two." Chaloult, 540 F.3d at 73. Both prongs involve a "judgment call as to reasonableness," which "is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." Reed, 333 F.3d at 34.

As to the first prong, the DOE contends that its adoption of Regulation 4661 and its swift response to Agusty's January 2007 complaint constituted "reasonable care to prevent and correct" sexual harassment. The argument fails for at least two independent reasons.

First, there is no evidence that the DOE made the slightest effort to communicate its policy, whether or not it was reasonable on its face, to any of its employees, let alone to its regional directors, its supervisors, or Agusty. An employer's failure to show that it had "established and disseminated an anti-discrimination policy, complete with a known complaint procedure" can prevent it from successfully claiming the Faragher-Ellerth defense. Marrero v. Goya of P.R., Inc., 304 F.3d 7, 21 (1st Cir.

2002) (emphasis added); cf. Chaloult, 540 F.3d at 74 (noting evidence at summary judgment that employer "had trained its employees regarding its policies, and that [plaintiff] knew of these policies"); Reed, 333 F.3d at 34 (noting evidence at summary judgment that defendant "offered evidence . . . both of its own procedures and of efforts to publicize them"). On these facts, a reasonable jury could conclude that the DOE's failure to disseminate its sexual harassment policy and complaint procedure prevented it from satisfying the first prong of Faragher-Ellerth.

Further, independent issues of fact exist as to whether the policy itself, both on its face and as administered, constituted "reasonable care to avoid harassment and to eliminate it when it might occur," Faragher, 524 U.S. at 805. As Agusty's experience illustrates, the DOE's application of Regulation 4661 affords victims no opportunity to testify in support of their complaints once they are filed or to reply to the alleged harassers' testimony. By contrast, those accused of sexual harassment are given an ex parte proceeding at which they can present their version of events, with counsel, without fear of rebuttal testimony or corroborative evidence from alleged victims and witnesses. Victims are not even given notice of the hearing. Indeed, in this case, the examining officer's decision turned on a credibility determination that weighed Hernández's live testimony against Agusty's written statement, when she was given no

opportunity to testify in person. A jury could readily find that these procedures were inherently unreasonable. A jury could also find that the investigation here was so cursory as to be inadequate.

On the second prong, the DOE asserts that Agusty unreasonably failed to take advantage of its procedures, claiming "[t]he record is clear . . . that she never provided a detailed, full version of the alleged facts to the [DOE] until after her January 22, 2007 complaint."

The DOE's position seems to be that an employee only acts reasonably if the employee follows the DOE's formal procedure, and that it is entitled to ignore any notice of harassment that is outside of the procedure. But a reasonable jury could find otherwise: that based on the two union complaints, at least one of which was copied to the DOE, and her meeting with Delgado,[7] Agusty had exercised "reasonable care . . . to prevent harm that could have been avoided." Id. A jury could also reasonably find that the DOE had an obligation to investigate Agusty's complaints of both a harassing atmosphere and quid pro quo harassment before

---

[7] It is not clear from the record whether Delgado, the DOE's Regional Director for Agusty's region, was also the DOE's "Regional Coordinator" for purposes of Regulation 4661. However, Delgado was clearly a senior DOE official who, in response to Agusty's description of Hernández's sexual harassment, gave her explicit--albeit incorrect--guidance on how to report the abuse. Nonetheless, as neither party has claimed otherwise, we assume, arguendo, that Agusty's meeting with Delgado did not qualify as a formal complaint under Regulation 4661.

Hernández would give Agusty a favorable tenure evaluation. A jury could easily reject the DOE's apparent position that no reports of harassment short of formal notice of sexual assault are sufficient to satisfy an employee's obligation under Faragher-Ellerth's second prong.

Even if the precise complaint procedure bore significance, on this record, a reasonable jury could find that Agusty was never informed of any procedures for reporting incidents of sexual harassment. As a result, she spent months trying to arrange a meeting with the DOE's Regional Director. When she finally secured a meeting with him in September 2006, she says that she thoroughly detailed Hernández's behavior. Shortly thereafter she followed up on the meeting with a letter to the Regional Director and other DOE officials, in which she again referenced Hernández's "inappropriate conduct toward [her] person." In early December 2006, acting on the Regional Director's explicit instructions, Agusty filed a formal complaint with the union, asserting that Hernández had made "sexual overtures" toward her. A copy of this complaint was sent to the DOE. About two weeks later, she reiterated her allegations in a second complaint to the union.

A jury could undoubtedly conclude that Agusty's concerted efforts to report Hernández's inappropriate behavior well before her January 22, 2007, complaint, constituted an altogether

-24-

reasonable attempt to avoid further harm.  Cf. Chaloult, 540 F.3d at 67 ("At no time prior to her resignation did [plaintiff] complain about sexual harassment.").

Further, the DOE's arguments show a misunderstanding of its obligations under Title VII as to sexual harassment in other ways.  A complainant need not, on a first report to the employer, give a "detailed, full" report to put the employer on notice.  When a supervisor's behavior is at issue, an employee need only make "reasonable" use of the reporting procedures provided by her employers to render the Faragher-Ellerth defense unavailable.  Faragher, 524 U.S. at 807; see also Chaloult, 540 F.3d at 66; Arrieta-Colon, 434 F.3d at 86.

## B. A Reasonable Jury Could Find That Agusty Suffered Prohibited Retaliation, 42 U.S.C. § 2000e-3

Agusty also brought a claim under Title VII's anti-retaliation provision, which, inter alia, forbids discrimination against employees because they have opposed practices that are unlawful under Title VII.  42 U.S.C. § 2000e-3.  To prevail, Agusty must show "that (1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity."  Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007).

The relevant inquiry for purposes of Agusty's retaliation claim is not whether Agusty suffered an "employment action," but instead whether she experienced a materially adverse action, that

-25-

is, mistreatment that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); see also Dixon, 504 F.3d at 81. A reasonable jury could conclude that the intensification of Hernández's harassment, following Agusty's several reports to the DOE and Hernández's supervisor and culminating in the sexual assault, met this requirement.

The timing of this escalated harassment creates a reasonable inference that Hernández's behavior was motivated by Agusty's protected activity. See Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."). Hernández completed his harsh evaluation about two weeks after Agusty first described his conduct to the DOE's Regional Director and two days after he was copied on a letter related to that meeting.

IV.

We reverse the district court's grant of summary judgment in favor of the DOE and remand for further proceedings consistent with this decision.

So ordered.