# United States Court of Appeals
## For the First Circuit

No. 18-1008

LEONIDES NIEVES-BORGES, MAHALIA FALCO,

Plaintiffs, Appellants,

v.

EL CONQUISTADOR PARTNERSHIP, L.P., S.E., d/b/a EL CONQUISTADOR
RESORT, A WALDORF ASTORIA RESORT; EL CONQUISTADOR WALDORF
ASTORIA RESORT; EL CONQUISTADOR RESORT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., Chief U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Barron, Circuit Judges.

Glenn Carl James for appellant.
Mariel Y. Haack-Pizarro, with whom Liana M. Gutiérrez-Irizarry was on brief, for appellees.
Gail S. Coleman, with whom James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, and Elizabeth E. Theran, Assistant General Counsel, were on brief, for amicus curiae Equal Employment Opportunity Commission.

August 21, 2019

**LIPEZ**, **Circuit Judge**.  Appellant Leonides Nieves-Borges ("Nieves") claims that he was sexually harassed for more than a decade, and thus subjected to a hostile work environment, by the human resources director at the Puerto Rico resort where he worked. Nieves further asserts that resort managers retaliated against him for complaining about this treatment.  He brought claims for sexual harassment and retaliation under both Title VII of the Civil Rights Act of 1964 and Commonwealth law, all of which were dismissed by the district court in a summary judgment for the defendant.[1]  We conclude that the district court properly dismissed the retaliation claims.  However, the district court incorrectly held that alleged incidents of harassment that occurred earlier than 2014 were time-barred, an error that contributed to other flaws in its analysis.  We therefore vacate dismissal of the sexual harassment claims based on a hostile work environment and remand for reconsideration of those claims.

---

[1] Nieves's wife, Mahalia Falco, also is a plaintiff/appellant. Because her claims are derivative of her husband's, we refer only to Nieves throughout this opinion.  Similarly, we refer in the singular to Nieves's employer -- El Conquistador Resort -- although the complaint names multiple El Conquistador corporate entities as defendants.

## A. Factual Background

We draw our factual summary primarily from the district court's opinion and the defendant's Statement of Uncontested Material Facts ("SUMF"), including its exhibits.[2] In so doing, we bypass Nieves's contention that the district court improperly struck his opposition to the resort's motion for summary judgment and its accompanying Statement of Material Contested Facts. We need not consider the opposition because, relying solely on the SUMF and exhibits, we detect flaws in the district court's reasoning that require reconsideration of Nieves's hostile work environment claims, and nothing in the stricken materials would change our evaluation of the retaliation claims. Like the district court, we also describe the allegations in Nieves's complaint where relevant to our discussion.

Nieves worked at the El Conquistador Resort in Fajardo, Puerto Rico,[3] from October 1993 until his termination in July 2015, serving as the food and beverage manager at the time of his

---

[2] The SUMF contains 188 paragraphs and forty-six exhibits. The exhibits include a lengthy statement that was part of Nieves's complaint filed with the Equal Employment Opportunity Commission, an internal complaint he submitted to the hotel, and excerpts from the depositions of Nieves, his wife, and other resort employees.

[3] The parties refer to the El Conquistador as a "hotel." We use the broader term "resort," consistent with the property's formal name. The El Conquistador Resort, inter alia, features multiple food and beverage venues.

discharge. He claims that the resort's director of human resources ("HR"), Luis Álvarez, sexually harassed him for thirteen years, between 2001 and 2014. He alleges a general pattern of sexually charged interactions, unfair criticisms of his work, and multiple specific incidents. Nieves testified in his deposition that Álvarez touched him "[a] gazillion times" between 2001 and 2014. He claimed the behavior included, on average, two or three episodes every week in which Álvarez would seek him out and, finding him, "examin[e] with his eyes the physical body of Mr. Nieves in a very sexual manner from up to down," as well as repeated requests to socialize after hours.[4]

One specific incident emphasized by Nieves in his complaint allegedly occurred in 2007, when he and Álvarez were in Orlando for a convention, and Álvarez invited him to join other resort managers for lunch. No one else arrived at the restaurant and, as the two men were finishing lunch, Álvarez allegedly put his hand on Nieves's leg and said, "what [do] we do next?" Nieves claims

---

[4] When asked at his deposition what aspect of the social invitations was "sexual in nature," Nieves replied:

> The way he said it, the way he looked at me, the way his eyes would glow up and look at me in a very pervasive manner, the way he would touch my hands and grab me and not let go and just look at me.

that Álvarez then displayed his hotel keys, shaking them in the air.[5]

Nieves's complaint also highlights three alleged interactions in 2014 in which Álvarez sought after-hours contact at Álvarez's home.  First, on May 26, Álvarez called at 7:47 PM to invite Nieves to his residence to show him "something."  Second, on July 3, Álvarez called Nieves at 6:15 PM to invite him over to discuss work-related matters.  Third, on August 19, at 8:20 AM, Álvarez again invited Nieves to his home "to socialize" and, during that conversation, allegedly touched Nieves's hands "in a very sexual manner, . . . sexually looking [at his] physical body from up to down," and invited him to have drinks after work.  Nieves testified that another incident, in October 2014,[6] allegedly occurred in a

---

[5] We note that the SUMF acknowledges this alleged encounter, although the document does not include the details of touching or display of keys.  The SUMF contains the following entry:  "As to the alleged 2007 business trip, Plaintiff was forced to admit that Mr. Álvarez did not invite Plaintiff to his hotel room, he allegedly asked him what he wanted to do next."  SUMF ¶ 146.  In support, the paragraph cites to the following excerpt from Nieves's deposition:

> Q: The fact of the matter is that he asked you what you wanted to do next.  He did not say, "Come to my room."  Did he?
> Nieves:  He did not say that.

[6] Although the excerpt of Nieves's deposition that is attached to the SUMF does not include the date of the alleged cafeteria incident, the district court placed it in October 2014, evidently relying on the prior page of the deposition, which was attached to Nieves's opposition to the motion for summary judgment.  We follow the district court's lead in dating the incident.

resort cafeteria, when "Álvarez was staring at [him] in a predatory manner" as Nieves waited in line to be served.

Deposition testimony from at least three individuals corroborated Nieves's allegation of repeated touching. A co-worker saw Álvarez run his hand down Nieves's back on one occasion between 2006 and 2008 and touch his head on another occasion. In the latter instance, the co-worker recalled thinking to himself, "Hmm. This is ugly." The co-worker also testified that he at one point asked Nieves, "what's up with all that pawing?" A second co-worker testified that he saw Álvarez massage Nieves's "shoulders down to back" sometime between 2005 and 2008, and went on to say "that was not the only incident." Nieves's wife stated that she observed Álvarez hug her husband "around three times" between 2007 and 2010, at the resort's Christmas parties, and she could "see[] how he would lure [Nieves] in the unwanted hugs."

Nieves explained that he did not report the sexual harassment to management through the years "because he feared for his job security." SUMF, ¶ 167. However, he reported in his complaint that the harassment "turned unbearable" in 2014. On August 21, 2014, Nieves was informed by Alfredo Amengual, the resort's director of food and beverage, that, at Álvarez's direction, Nieves was being rotated from one food outlet within the resort, Palomino Island, to the night shift at another location, the Bella Vista restaurant. Distressed by the change, Nieves reported for medical

treatment to the State Insurance Fund, where he alleged that the transfer amounted to workplace harassment by Amengual and Álvarez. About a month later, on September 30, Nieves filed a thirteen-page internal complaint stating that Álvarez had begun subjecting him to a pattern of harassment, some of a sexual nature, beginning in November 2001.

Nieves was medically cleared to return to work on October 4, and he reported on that date to the Bella Vista restaurant. Meanwhile, an attorney assigned by the resort to perform an internal investigation into his complaints of harassment concluded that many of the events described in his written statement were inaccurate and lacking in corroboration. She noted that witnesses consistently reported that Nieves and Álvarez disliked each other, but she found no evidence of sexual harassment. However, in a letter sent to Nieves at the close of the investigation in January 2015, the resort's then-HR director, Olga Martínez Cruz ("Martínez"), stated that the resort "ha[d] taken steps to ensure that Mr. Amengual has a clear understanding" of its anti-harassment policies. The letter also noted that Álvarez no longer worked at the resort.[7]

---

[7] In its SUMF, the resort reported that Álvarez had voluntarily resigned in November 2014, "stating that regardless of the outcome of the investigation, his reputation had been irreparably tarnished by Plaintiff's malicious accusations."

Despite Álvarez's departure, the period between January 2015 and Nieves's termination roughly six months later was -- as the district court characterized it -- "turbulent." Borges v. El Conquistador P'ship, 280 F. Supp. 3d 295, 306 (D.P.R. 2017). Nieves was disciplined three times during that interval. First, in early January, he was suspended for two weeks after a female subordinate complained that he asked her to file a false sexual harassment claim against Amengual. According to Martínez, the suspension "was also related to acts of insubordination against his supervisor for raising his voice to him and refusing to follow instructions." She noted that Nieves's conduct provided grounds for immediate termination, but he was not fired because of his long tenure. Second, in May 2015, Nieves received a written warning for deliberately falsifying payroll records to increase a supervisor's hours, "resulting in an improper payment to the supervisor." Third, on July 15, Nieves notified Amengual, his supervisor, that he would miss work the next day because he was ill. However, on his "sick" day, he was seen attending a promotional event associated with his family rum-making business. Nieves was suspended when he reported to work the following day, and, following a review of his personnel file and disciplinary history, Amengual and Martínez concluded that he should be terminated. On July 21, he was informed that, consistent with the

resort's code of ethics and employee manual, he was being fired because of the false report of illness.

Meanwhile, on February 12, 2015, Nieves had filed a charge of discrimination against the resort with the Equal Employment Opportunity Commission ("EEOC"), claiming, inter alia, that he was the victim of discrimination based on "a refusal to submit to sexual advances or based on sexual desire." In the twenty-page statement he filed with the charge, Nieves described the alleged thirteen-year pattern of harassment by Álvarez, including the Orlando lunch incident in 2007 and the three 2014 after-hours social invitations described above. Nieves alleged that Álvarez's actions had affected his mental and physical health, "resulting in loss of promotions [and] salary increases by undermining his [r]eputation, his image and his [d]ignity." He explained that he previously "had refrained and was reluctant" to report the details of Álvarez's conduct toward him "because he felt his job would be in jeopardy," but took action after Amengual informed him in August 2014 of his transfer from the Palomino Island location to the Bella Vista venue.

Nieves further asserted that the resort retaliated against him after he filed his internal complaint about Álvarez's conduct. He cited the transfer to Bella Vista and the two-week suspension without pay that had just been imposed. He contended that the rationale given for the suspension -- procuring a false sexual

harassment charge against Amengual -- was a pretext. He stated that he was transferred to Bella Vista and placed on the night shift five days after reporting Álvarez's sexual harassment and was suspended sixty days after that report.

The EEOC issued a Notice of Right to Sue in March 2015, and Nieves subsequently filed this action under Title VII and Commonwealth law. His thirty-seven-page complaint reiterated the allegations reported to the EEOC of sexual harassment over a thirteen-year period and retaliation in 2014 and 2015 following his complaints to management at the El Conquistador.

## B. Procedural Background

Following extensive discovery and the parties' failure to reach a settlement agreement, El Conquistador filed a motion for summary judgment on all claims, supported by the lengthy SUMF and accompanying exhibits. The resort argued that Nieves "was never subjected to a hostile work environment or retaliation," and that his "subjective perception of his environment is not reasonable, and therefore not actionable under Title VII." The resort further asserted that its actions with respect to the plaintiff "were taken for sound, business-related reasons." In addition, El Conquistador argued that even if the court were to find that Nieves faced "some objectively and subjectively offensive conduct," his unreasonable delay in reporting the situation triggered the

Faragher/Ellerth affirmative defense, which protects an employer from Title VII vicarious liability in certain circumstances.[8]

In response, Nieves filed a fifty-six-page opposition to the summary judgment motion and an "Opposing or Contested Statement of Material Contested Facts" that consisted of 204 paragraphs spanning seventy-two pages. The latter document addressed each of the resort's 188 paragraphs in turn, denying, admitting, or "qualify[ing]" the facts contained therein. The remaining paragraphs comprised Nieves's "Separate Section of Additional Facts." The resort filed a reply, in which it moved to strike Nieves's opposition for failure to comply with local rules.[9]

---

[8] We have described the Faragher/Ellerth defense as follows:

> Under Title VII, an employer is subject to vicarious liability for sexual harassment by an employee's supervisor which does not constitute a tangible employment action. But the employer may prevail if it demonstrates a two-part affirmative defense: that its own actions to prevent and correct harassment were reasonable and that the employee's actions in seeking to avoid harm were not reasonable.

Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)).

[9] The hotel claimed, inter alia, that Nieves had violated Local Rule 56(c), which requires a "party opposing summary judgment to submit a separate, short, and concise statement of material facts admitting, denying or qualifying the corresponding facts that support the motion, with record citations in support." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 137 (1st Cir. 2012).

The district court granted both the resort's motion to strike Nieves's opposition and its motion for summary judgment. In explaining the former, the court stated that the opposition was "beyond confusingly constructed and lacking in coherence," Borges, 280 F. Supp. 3d at 304 (internal quotation marks omitted), and that it was "'unintelligible at times,'" id. at 305 (quoting El Conquistador's Reply and Motion to Strike). The court thus admitted all but six of the resort's paragraphs as improperly controverted and thus uncontested, and it ruled that all but two of Nieves's additional facts were properly controverted and thus not deemed admitted.

On the merits, the court found that none of the acts that allegedly occurred within the applicable Title VII statute of limitations[10] -- i.e., the three social invitations and the "predatory" staring in the cafeteria, all in 2014 -- could be found by a jury to constitute sexual harassment. Hence, the court held that Nieves could not rely on any earlier incidents to establish a hostile work environment. See, e.g., Maldonado-Cátala v.

---

[10] An employee must exhaust administrative remedies before filing a Title VII claim, and one component of the exhaustion requirement is the filing of the administrative charge with the EEOC within 180 or 300 days of the offending conduct, depending upon whether the plaintiff initially filed with a state or local agency. See Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 389-90 (1st Cir. 2014). Neither party disputes the district court's determination that a 300-day limitations period applies here.

- 12 -

Municipality of Naranjito, 876 F.3d 1, 9 (1st Cir. 2017) ("[U]nder the continuing violation doctrine, 'a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period.'" (quoting Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009)). Specifically, the court found that no reasonable jury could conclude that the timely conduct Nieves alleged -- "looks, hand touching, and invitations to Álvarez's house" -- satisfy two of the prerequisites for an actionable hostile work environment claim: sex-based motivation and severe or pervasive harassment. Borges, 280 F. Supp. 3d at 309; see, e.g., Roy v. Correct Care Solutions, LLC, 914 F.3d 52, 61-62 (1st Cir. 2019) (listing the six elements a plaintiff must show "[t]o succeed on a hostile work environment claim under Title VII"); see infra Section II.A.1.

On the issue of sex-based motivation, the court stated, inter alia, that Nieves offered neither evidence that Álvarez targeted him because he is male nor evidence permitting such an inference, such as "sexual propositions, groping, or comments about engaging in sexual relations." Borges, 280 F. Supp. 3d at 310. Moreover, the court held, "given the totality of the circumstances," the alleged conduct could not reasonably be deemed "severe and pervasive." Id. at 311. Noting that none of the four incidents involved "explicitly sexual remarks or propositions," the court

- 13 -

went on to observe that even the alleged hand-touching and scrutiny of his body were "not close" "[o]n the scale of what has been recognized as egregious conduct rising to the required level." Id. (alteration in original) (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014)).

As described more fully below, the court held that Nieves's Title VII retaliation claim failed for lack of causation. It granted summary judgment on the supplemental Commonwealth law claims on the same grounds as the federal claims. This appeal followed.

## II.

Nieves argues on appeal that the district court erred in striking his opposition for failing to conform to the requirements of Puerto Rico Local Rule 56, and he asserts that the record reveals genuine, material factual disputes concerning his claims of sexual harassment and retaliation. We reiterate that we need not address the district court's rejection of Nieves's opposition. As we shall explain, the SUMF and exhibits, viewed in the light most favorable to Nieves, see Roy, 914 F.3d at 57, contain relevant evidence in support of Nieves's hostile work environment claim, as properly understood, which the district court failed to consider appropriately. The court therefore must revisit whether a reasonable jury could resolve the sexual harassment claim in Nieves's favor. See, e.g., Bonilla-Ramirez v. MVM, Inc., 904 F.3d

88, 93 (1st Cir. 2018) (stating that we may affirm summary judgment only if "the record discloses no genuine issues of material fact and demonstrates that the moving party is entitled to judgment as a matter of law"). On remand, the district court also has the option to reconsider its decision to strike Nieves's submissions.

## A. Hostile Work Environment under Title VII

### 1. Legal Principles

We have identified as follows the six elements that generally must be proven to succeed on a sex-based hostile work environment claim under Title VII:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Roy, 914 F.3d at 62 (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)). The district court limited its assessment of Nieves's claim to conduct that occurred in 2014 based on its view that, unless the 2014 conduct satisfied these elements, earlier incidents could not be considered. Having found that none of the alleged 2014 episodes -- the three after-hours social invitations and the cafeteria-line staring -- amounted to

- 15 -

actionable sexual harassment, the court held that "all incidents prior to those 2014 incidents are time barred." Borges, 280 F. Supp. 3d at 309. However, that time restriction was erroneous.[11]

A hostile work environment claim is premised on "an accumulation of 'individual acts that, taken together, create the environment.'" Maldonado-Cátala, 876 F.3d at 9 (quoting Tobin, 553 F.3d at 130). So long as one "instance of harassment" falls within the statutory limitations period, Franchina v. City of Providence, 881 F.3d 32, 47 (1st Cir. 2018), "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); see also Maldonado-Cátala, 876 F.3d at 10 ("[W]e may consider the defendant['s] alleged behavior in the early years of [the plaintiff's] employment only if at least one of the incidents that occurred after . . . the earliest date within the limitations period [] constitutes part of the same hostile work environment as the alleged wrongful conduct that preceded that date.").

Indeed, because a hostile work environment develops over time, as objectionable behavior is repeated, it is unremarkable

---

[11] Concerned about the district court's legal error, the EEOC filed an amicus brief to address this "important issue regarding the timeliness of harassment charges." Amicus Br. at 1. The Commission took no position on the parties' fact-based arguments.

for some related episodes to fall outside the limitations period. Importantly, because the claim may be built on "'[t]he accumulated effect' of behaviors that individually fall short," Maldonado-Cátala, 876 F.3d at 12 (alteration in original) (quoting O'Rourke, 235 F.3d at 729), a timely "anchoring act" need not on its own be actionable under Title VII, Pérez v. Horizon Lines, Inc., 804 F.3d 1, 7-8 (1st Cir. 2015); it must only "contribut[e] to" the impermissibly harassing environment, Morgan, 536 U.S. at 117; see also Franchina, 881 F.3d at 47.

## 2. Analysis

Here, a jury could reasonably find that the incidents that allegedly occurred in 2014 -- which included unwanted touching and "predatory" staring, Borges, 280 F. Supp. 3d at 307 -- were instances, within the limitations period, of the claimed pattern of sexually charged interactions. Hence, because these encounters could reasonably be deemed "act[s] contributing to" the alleged hostile work environment, Morgan, 536 U.S. at 117, the full history of Nieves's challenged interactions with Álvarez, to the extent supported by the record, is properly considered in determining liability.

The district court's timing error on its own warrants a remand for the court to reconsider Nieves's hostile work environment claim. However, the court's discussion suggests that it also may have misapprehended the law in assessing the two elements it deemed

dispositive in rejecting that claim: "that the harassment was based upon sex" and "that the harassment was sufficiently severe or pervasive so as to alter the conditions of [his] employment." Roy, 914 F.3d at 62 (quoting O'Rourke, 235 F.3d at 728). We thus briefly review the pertinent principles as applied to this case.[12]

### a. "[B]ased upon sex"

It is well established that "sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998). The district court recognized this principle, but it stated that Nieves had offered no evidence -- "like sexual propositions, groping, or comments about engaging in sexual relations" -- permitting an inference that Álvarez targeted Nieves "because of his gender." Borges, 280 F. Supp. 3d at 310. It is unclear if the district court was referring only to the four alleged 2014 episodes in concluding that Nieves's showing fell short, or whether it also was rejecting the testimony of Nieves and his co-workers concerning earlier episodes that also allegedly included physical contact or suggestive staring.

---

[12] The district court noted that the defendants had argued that Nieves "cannot satisfy" three of the six elements of a prima facie case. Borges, 280 F. Supp. 3d at 310. The court concluded that one of those elements, employer liability, presented a jury question. See, e.g., Agusty-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 53-56 (1st Cir. 2010) (describing a fact-intensive inquiry into the applicability of the Faragher/Ellerth affirmative defense).

In any event, it appears that the district court may have mistaken the degree of explicitness the law requires to establish a sex-based motive.  Nieves's claim does not depend on evidence of explicit sexual propositions; sex-based motivation may be inferred from, inter alia, "implicit proposals of sexual activity."  Oncale, 523 U.S. at 80 (emphasis added); see also, e.g., Tang v. Citizens Bank, N.A., 821 F.3d 206, 216 (1st Cir. 2016) ("Title VII . . . does not require evidence of overtly sexual conduct for a sexual harassment claim."); Billings v. Town of Grafton, 515 F.3d 39, 48 (1st Cir. 2008) (observing that the district court "placed undue weight" on the plaintiff's failure to allege "touching, sexual advances, or overtly sexual comments to or about her" (internal quotation marks omitted)).  In addition, the fact that Nieves also alleges unfair criticism of his work -- i.e., harassment lacking "obvious sexual connotations" -- "does not diminish the force of . . . evidence [that] indicat[es] gender-based animus."  Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 28 (1st Cir. 2011).

### b. "[S]ufficiently severe or pervasive"

Harassment that is "sufficiently severe or pervasive" to create a hostile work environment must reach a level that "alter[s] the conditions of the victim's employment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)), quoted in Roy, 914 F.3d at 61.

- 19 -

Significantly, severity and pervasiveness are alternative criteria for evaluating whether a plaintiff has been subjected to an "abusive work environment," Roy, 914 F.3d at 62 (quoting O'Rourke, 235 F.3d at 728), and a series of individually tolerable incidents that add up to a "pattern of hostility" can therefore suffice, id. at 64.

The district court, however, appeared to view the law as requiring both severity and pervasiveness, framing the inquiry multiple times in the conjunctive. It labeled that portion of its analysis "Fourth Element: Severe and Pervasive," Borges, 280 F. Supp. 3d at 310, and repeatedly used the conjunctive formulation in its discussion, see id. at 311-13.[13] In addition, the court's reasoning on this element was also likely flawed by its incorrect focus on only the 2014 incidents. See id. at 311 ("[N]o reasonable jury could find that the four incidents that occurred within 300 days of filing the EEOC complaint were 'severe and pervasive.'").

### 3. Conclusion

The district court's statute-of-limitations error necessarily impacted its assessment of the hostile work environment claim. On remand, the court should consider the admissible evidence covering the entire period of alleged harassment, while also adhering to

---

[13] We acknowledge that this court, too, has made such an error on at least one occasion. See Pérez-Cordero, 656 F.3d at 29.

our precedent on what it means for conduct to be "based upon sex" and on the alternative nature of the "severe or pervasive" element. We therefore vacate the summary judgment for the resort on Nieves's hostile work environment claim.

## B. Title VII Retaliation

To succeed with a claim of retaliation in violation of Title VII, "a plaintiff must show that (i) []he undertook protected conduct, (ii) []he suffered an adverse employment action, and (iii) the two were causally linked." Tang, 821 F.3d at 218-19 (quoting Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005)). On appeal, Nieves identifies his protected conduct as the internal harassment complaint he filed on September 30, 2014, and he cites his transfer four days later from the Palomino Island food outlet to the Bella Vista restaurant as the adverse employment action. The record, however, belies any relationship between those two events.[14]

---

[14] In the district court, Nieves also claimed that his January 2015 suspension and his July 2015 suspension and termination were retaliatory. With respect to the July actions, the district court observed that, even if Nieves could prove that he would not have been terminated but for his EEOC complaint, "Defendants have met their burden of providing a non-discriminatory reason for his suspension and termination." Borges, 280 F. Supp. 3d at 315.

Although Nieves no longer relies on the suspensions and termination to support his retaliation claim, the EEOC as amicus has urged us to clarify "the meaning of 'but-for' causation, a critical aspect of liability for retaliation under Title VII." Amicus Br. at 1. We therefore note that the district court's reasoning is flawed. If Nieves proved that he would not have been suspended or fired absent a retaliatory motive -- i.e., that such

Nieves has consistently maintained that he was told on August 21, 2014 that Álvarez had ordered his immediate transfer from Palomino Island to the night shift at Bella Vista, and that the decision was final. However, the reassignment was delayed because Nieves reported to the State Insurance Fund for medical treatment in late August. He moved to Bella Vista immediately upon his return to work in early October. Hence, although the transfer took effect after Nieves filed his internal complaint, it is uncontested that the decision to transfer him was announced approximately six weeks earlier. Accordingly, no reasonable jury could find that "the two were causally linked." Tang, 821 F.3d at 219 (quoting Noviello, 398 F.3d at 88). We thus conclude that the district court properly granted summary judgment for El Conquistador on Nieves's Title VII retaliation claim.

## C. Supplemental Claims

Having found that neither of Nieves's Title VII claims survived, the district court concluded that summary judgment for the resort was appropriate "[f]or the same reasons" on Nieves's equivalent claims under Puerto Rico law. Borges, 280 F. Supp. 3d

---

actions would not have occurred "but for" his protected conduct -- the resort's additional, non-retaliatory explanations for its conduct would not defeat the retaliation claim. See, e.g., Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 278 (1st Cir. 2014) (noting that a Title VII plaintiff alleging retaliation "must show that he would not have been fired had he not complained").

at 316.  On remand, the district court should reconsider the claims brought under Laws 100, 69, and 17 in light of our Title VII analysis.  Nieves does not argue on appeal that the district court erred in dismissing claims alleging violation of Puerto Rico's tort statutes, Laws 1802 and 1803, and any challenge to that portion of the court's ruling is therefore waived.

## III.

For the reasons given above, we vacate the summary judgment for El Conquistador on Nieves's claim that he was subjected to a hostile work environment in violation of Title VII.  Nieves's Title VII retaliation claim, however, fails as a matter of law for lack of causation.  The supplemental claims alleging violations of Puerto Rico laws analogous to Title VII must be reviewed on remand.  Accordingly, the judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

So ordered.  Costs to appellant.