Beatriz **MORALES–DIAZ**, Plaintiff,

v.

The **PUERTO RICO ELECTRIC POWER AUTHORITY**, Defendant.

**Civil No. 10–1958 (ADC).**

United States District Court, D. Puerto Rico.

Sept. 30, 2012.

Authority ("PREPA" or "defendant"), alleging, *inter alia,* that she was discriminated against in her employment due to her sex, in the form of hostile work environment sexual harassment, and suffered retaliation for denouncing her supervisor for these acts. Morales invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et seq.*; Commonwealth Act No. 100 of June 30, 1959, as amended, P.R. Laws Ann, tit. 29, § 146 *et seq.;* Commonwealth Act No. 69 of July 6, 1985, as amended, P.R. Laws Ann, tit. 29, § 1321 *et seq.;* and, Commonwealth Act No. 17 of April 22, 1988, as amended, P.R. Laws Ann, tit. 29, § 155. **ECF No. 1.**

Now before the Court is defendant's motion for summary judgment, statement of uncontested facts, and reply as well as plaintiff's opposition to defendant's summary judgment and memorandum in support thereof, response to defendant's statement of facts and counterstatement of material facts. **ECF Nos. 60, 51, 67, 67–1.** At issue is whether defendant is entitled to the *Faragher–Ellerth* defense; and, if not, whether plaintiff's allegations and proffered evidence support causes of action for sex discrimination and retaliation.

## I. Factual Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of facts, plaintiff's responses, and plaintiff's counter-statement of facts. **ECF Nos. 51, 67–1.** Consistent with the summary judgment standard, the court states the facts in the light most favorable to plaintiff, the nonmoving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006).

Plaintiff commenced her employment with defendant, PREPA, on April 12, 2004. **ECF No. 51** at ¶ 1; **ECF No. 67–1** at ¶ 1; Plaintiff's Statement of Facts ("PSOF") at

Bamily Lopez–Ortiz, Lopez Toro, Law and Notary Offices, San Juan, PR, for Plaintiff.

Jo–Ann Estades–Boyer, Gurabo, PR, for Defendant.

### OPINION AND ORDER

AIDA M. DELGADO–COLON, Chief Judge.

Plaintiff, Beatriz Morales–Díaz ("plaintiff" or "Morales"), brings suit against defendant, the Puerto Rico Electric Power

¶ 2. Morales has been receiving salary increases since May 20, 2007, up to August 24, 2011. ECF No. 51 at ¶ 2; ECF No. 67–1 at ¶ 2. She is an Office Clerk with regular status assigned to the Transmission and Distribution Directoriate of the Technical Office of San Germán, for PREPA's Mayagüez Region. ECF No. 67–1, PSOF at ¶ 1.

Upon her request, plaintiff was appointed to the Technical Offices of San Germán on October 23, 2006. ECF No. 67–1, PSOF at ¶ 6. From 2006 until February of 2009, plaintiff's immediate supervisor was Luis Rodríguez–Rodríguez ("Rodríguez"). Plaintiff alleges that Rodríguez began a pattern of sexual harassment against her in 2006. ECF No. 51 at ¶ 12; ECF No. 67–1 at ¶ 12. However, in February 13, 2006, plaintiff filed a sexual harassment complaint at PREPA's Equal Employment Opportunity Office against another employee, Ramón Soto–Cruz.[1] ECF No. 51 at ¶ 14; ECF No. 67–1 at ¶ 14; PSOF at ¶ 3. Plaintiff acknowledges she did not follow PREPA's established procedures for her first complaint. ECF No. 51 at ¶ 15; ECF No. 67–1 at ¶ 15.

Plaintiff admitted she used to have breakfast/coffee with Rodríguez on his desk. ECF No. 51 at ¶ 13. Rodríguez would insist on going out with her, that he wanted to be with her, and would comment on her physical appearance. Plaintiff requested that Rodríguez stop this conduct in order to not contaminate the work environment. ECF No. 67–1, PSOF at ¶ 13.

In December of 2007, plaintiff met her romantic partner, Ángel Kemuel Lamberty, a coworker at PREPA. In the beginning of their relationship, Rodríguez' comments intensified. However, during the beginning of 2008, Rodríguez told plaintiff that he was "throwing the towel" because Kemuel was his "buddy" and the harassment stopped. ECF No. 67–1, PSOF at ¶¶ 15–16. The harassment restarted during December of 2008, when Rodríguez made sexually explicit gestures with his mouth, including tongue movements and biting his lips. ECF No. 67–1, PSOF at ¶ 17. Rodríguez always insinuated that he wanted to be with plaintiff, that she was the woman for him and always tried to accompany her whenever she went somewhere, like the bathroom. ECF No. 67–1, PSOF at ¶ 22.

Then, at one point on February 4, 2009, Rodríguez was not in his cubicle and plaintiff was on her way to the bathroom, which was at the end of the hallway. On her way to the bathroom, Rodríguez called to her, said "look at this," and showed her a photograph of a naked woman, straddling a motorcycle, in an open position, with one leg down and the other risen. Plaintiff understood the naked women resembled her. ECF No. 67–1, PSOF at ¶ 18. Plaintiff was frightened by Rodríguez and blurted out "where did you get this from?" Coworker Quetsy Laboy ("Laboy") was walking by and plaintiff called her quickly saying "Quetsy, come here, look at what this guy is showing me!" Rodríguez became nervous. ECF No. 67–1, PSOF at ¶ 19. Laboy asked Rodriguez where he had gotten the magazine. Rodríguez said it belonged to their coworkers, to which Laboy responded "you are crazy" and left with plaintiff. ECF No. 67–1, PSOF at ¶ 20.

Plaintiff believed that Rodríguez was obsessed with her. ECF No. 67–1, PSOF at ¶ 21. After the magazine incident, plaintiff became extremely frightened and thought that the next incident may involve Rodríguez touching her or trying to kiss her. ECF No. 67–1, PSOF at ¶ 23. The maga-

---

1. After a hearing was conducted regarding this complaint, PREPA sanctioned Soto–Cruz with an 80 hour suspension. ECF No. 67–1, PSOF at ¶ 4.

zine incident occurred on a Wednesday and the following Friday, plaintiff was alone in the office when Rodríguez asked plaintiff once again for a chance, stating "I want to be with you ... if you were with me, I would make you happy." ECF No. 67–1, PSOF at ¶ 24. Plaintiff's original intention was to have the objectionable conduct stop; she did not want to file any charges against Rodríguez. ECF No. 67–1, PSOF at ¶ 26.

Plaintiff called Freddyson Martínez, UTIER's Chapter President, and explained these incidents. Freddyson Martínez quickly contacted the District Engineer, Raúl Ruíz ("Ruíz"), and told him they had to meet as soon as possible because plaintiff had complained about a situation that was happening that required immediate attention. ECF No. 67–1, PSOF at ¶ 27. Freddyson Martínez also wrote a letter, dated February 11, 2009, requesting that Ruíz conduct an investigation on the sexual harassment allegations. Ruíz was contacted inasmuch as he was the area's supervisor. ECF No. 67–1, PSOF at ¶ 28. The first meeting was held on February 19, 2009. ECF No. 67–1, PSOF at ¶ 29.

The second meeting was held on February 20, 2009, at plaintiff's request, and was to be followed-up because the UTIER wanted an affirmative action: to have Rodríguez moved. Gilberto Martínez of Corporate Security, Ruíz, Ana Delia Cabrera, plaintiff, and Freddyson Martínez attended the second meeting. ECF No. 67–1, PSOF at ¶ 34. At the second meeting, Ruíz gave two proposed alternatives or solutions: (1) that Rodríguez be allowed to remain at the premises but assigned to Joselyn Acosta's office or (2) send Rodríguez to Mayagüez. Plaintiff indicated that she preferred the second alternative. However, Rodríguez was never transferred to Mayagüez. ECF No. 67–1, PSOF at ¶¶ 36, 56.

On February 26, 2009, plaintiff filed a sexual harassment complaint against Rodríguez at PREPA's Equal Employment Opportunity Office. ECF No. 51 at ¶ 16; ECF No. 67–1 at ¶ 16; PSOF at ¶ 38. After she filed this complaint, the office investigated her complaint until its conclusion. ECF No. 51 at ¶ 17. Plaintiff acknowledges that, after she filed the complaint at the Employees Equal Employment Opportunity Office, PREPA moved Rodríguez to another office and prohibited him from entering her office. ECF No. 51 at ¶¶ 17, 18. PREPA also moved plaintiff's parking spot to another place. ECF No. 51 at ¶ 20.

After filing the administrative charge, Rodríguez cried and told his coworkers that plaintiff had complained of sexual harassment against him. ECF No. 67–1, PSOF at ¶ 39. After this, plaintiff and Laboy were drinking coffee with the door closed because they understood the work environment had become aggressive. Suddenly, the door opened and co-worker Joselyn Acosta ("Acosta") came in yelling: "I do not believe this thing with Beatriz, why are you filing a case against this poor man? I can not believe what you are doing? You can not do this to him," in reference to Rodríguez. Laboy stood up and told Acosta: "Hold on, because if this were happening to your wife or mother or a female family member, you would not be in that position, so analyze it and think!" ECF No. 67–1, PSOF at ¶ 43.

On March 2, 2009, Freddyson Martínez wrote a letter to the Office of Labor Matters to the attention of Linda Vázquez. The purpose of the letter was to provoke PREPA's intervention because he feared for plaintiff and Laboy's safety. ECF No. 67–1, PSOF at ¶ 45. On March 13, 2009, another meeting was held between Freddyson Martínez, Ruíz, plaintiff, and Ana Delia Cabrera, who was taking the Min-

utes of the meeting. **ECF No. 67–1, PSOF at ¶ 46.** During the March 13th meeting, plaintiff informed Ruíz of the incident with Acosta. **ECF No. 67–1, PSOF at ¶ 47.** Two additional meetings were held on March 18, 2009. At the first meeting, Laboy, Ruíz, Freddyson Martínez and Ana Delia Cabrera, who was also taking the Minutes of the meeting, were present. Ángel Lamberty, Ruíz, Freddyson Martínez, and Ana Delia Cabrera attended the second meeting. **ECF No. 67–1, PSOF at ¶ 54.**

The work environment had taken a toll on plaintiff's health and she was taking medication for her emotional condition and other physical conditions, including a previous condition of costocondritis. **ECF No. 67–1, PSOF at ¶ 57.** She reported to the State Insurance Fund on February 26, 2009. **ECF No. 51 at ¶ 21.** One of the doctors in the State Insurance Fund told plaintiff that she could solve her work problems by taking a revolver and shooting two or three people at work. Plaintiff responded that she would rather use a baseball bat. **ECF No. 67–1, PSOF at ¶ 58.** Plaintiff told Laboy of the conversation with the State Insurance Fund doctor. **ECF No. 67–1, PSOF at ¶ 59.**

Ruíz then summoned plaintiff to a meeting in which her statement of threatening to use a baseball bat to solve her work-related problems was discussed. **ECF No. 67–1, PSOF at ¶ 61.** Laboy denied having complained about the comment to Ruíz. **ECF No. 67–1, PSOF at ¶ 62.** Plaintiff again sought treatment at the State Insurance Fund. **ECF No. 67–1, PSOF at ¶ 63.** Upon returning to the San Germán Technical Office, plaintiff learned that Ruíz had assigned her to attend a "compulsory" meeting with PREPA's then-Executive Director, Miguel Cordero. Plaintiff was assigned to Rodríguez' group. Plaintiff became hysterical and was ex-

tremely frightened, but did not complain to Ruíz about the assignment because she was afraid of him. **ECF No. 67–1, PSOF at ¶ 64.**

Plaintiff spent the entire week giving thought to the situation until the day before the meeting. She was crying because she did not know whether to attend the meeting, and continued crying until suddenly she "was gone." Lamberty called the front neighbor, a nurse, who believed plaintiff was in a catatonic state. Plaintiff did not talk and did not respond. She was admitted to a psychiatric hospital for one week. **ECF No. 67–1, PSOF at ¶ 65.** Plaintiff was referred by the State Insurance Fund for further treatment with Dr. Alberto Rodríguez–Robles. **ECF No. 67–1, PSOF at ¶ 67.** The psychiatrist recommended that plaintiff continue with psychiatric treatment and that she be reassigned from her working area. **ECF No. 67–1, PSOF at ¶ 68.**

After conducting the investigation into plaintiff's complaints of sexual harassment, PREPA concluded that the alleged harassment never occurred. **ECF No. 51 at ¶ 27.** PREPA, however, decided to sanction Rodríguez for his conduct. **ECF No. 51 at ¶ 28.** On August 18, 2010, plaintiff requested a transfer to Mayagüez; the same was granted on October 7, 2010. **ECF No. 51 at ¶¶ 29, 30.** Plaintiff has never been demoted and her salary has never decreased. **ECF No. 51 at ¶¶ 31, 32.**

Plaintiff considers the following events as acts of retaliation for her complaining about sexual harassment: (1) the procedure used to inform her about her parking space reassignment; (2) that the parking space reassignment did not remedy the contact between Morales and Rodríguez, who remained in front of Acosta's office, which was at the entrance she took for that parking space; (3) that the Minutes taken by Ana Delia Cabrera at the various

meetings plaintiff had with Ruíz did not reflect what was really occurring; (4) that Ruíz confronted plaintiff when she refused to sign the Minutes; (5) whenever plaintiff complained to Ruíz, he confirmed the facts with Laboy; (6) she felt incarcerated, that she could not leave the office because Rodríguez dominated the outside premises and the exits; (7) the Acosta incident; (8) Rodríguez' crying about the harassment complaint; (9) that there was no confidentiality in the proceedings; (10) that management did not transfer plaintiff to another position in order to solve the situation with Rodríguez; (11) that plaintiff understood that the EEOO's investigative proceeding was tainted because the investigator, Machado, was related to Ana Delia Cabrera and she understood that Machado never afforded her the benefit of the doubt and always assumed that she was not telling the truth; (12) that plaintiff felt isolated because she believed nobody wanted to talk to her. ECF No. 67–1, PSOF at ¶ 70.

Since December 21, 1990, PREPA has promulgated a Regulation regarding Sexual Harassment in the Workplace ("Sexual Harassment Regulation"). ECF No. 51 at ¶ 3; ECF No. 67–1 at ¶ 3. Section IV of PREPA's Sexual Harassment Regulation describes the procedure to be followed by an employee who is subjected to sexual harassment. ECF No. 51 at ¶ 4; ECF No. 67–1 at ¶ 4. Further, on July 5, 2005, PREPA created an Equal Opportunity in the Employment Policy about Harassment. ECF No. 51 at ¶ 5; ECF No. 67–1 at ¶ 5. All posters are posted in the Regional Office in Mayagüez. ECF No. 67–1, PSOF at ¶ 8.

PREPA provided seminars to plaintiff regarding prevention of sexual harassment in the work place before the alleged harassment took place. ECF No. 51 at ¶ 7; ECF No. 67–1 at ¶ 7. Plaintiff acknowledges that during her first week at PREPA, she received a training on sexual harassment in the workplace. ECF No. 51 at ¶ 11; ECF No. 67–1 at ¶ 11. Plaintiff acknowledges that she received a copy of PREPA's Procedure to Present Administrative Complaints for Employment Discrimination on February of 2008. ECF No. 51 at ¶ 9; ECF No. 67–1 at ¶ 9. Section IV of PREPA's Procedure to Present Administrative Complaints for Employment Discrimination makes the Complainant responsible for starting proceedings when sexual harassment has occurred. ECF No. 51 at ¶ 10.

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir.2008) (quoting the former Fed.R.Civ.P. 56(c)).[2] When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey*, 391 F.3d 25, 27 (1st Cir.2004).

However, the non-movant "must point to competent evidence and specific facts to

---

**2.** While Rule 56 was amended, effective December 1, 2010, "the substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki*, 629 F.3d 49, 54 n. 2 (1st Cir.2010) (citing Fed.R.Civ.P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed.R.Civ.P. 56(c) & (f).

stave off summary judgment" in order to defeat a properly-supported motion for summary judgment. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011). Thus, the court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or non-movant—who would bear the burden of proof on that issue at trial." *Alamo Rodríquez v. Pfizer Pharma.,* 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir. 2001)).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson,* 522 F.3d at 175 (quoting *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 317 (1st Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López–Rosario,* 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

Plaintiff alleges that defendant discriminated against her because of her gender as she was subjected to sexual harassment by her supervisor in the form of a hostile work environment and was retaliated against for complaining of said harassment. **ECF No. 1.** In response, defendant moves for summary judgment. **ECF No. 50.**

First, defendant invokes the *Faragher–Ellerth* defense and argues that plaintiff's claims must fail since she did not reasonably avail herself of PREPA's anti-discrimination policies. Thus, she is unable to establish employer liability. Second, defendant sustains that the alleged harassment did not create a hostile work environment. Last, defendant avers that plaintiff's retaliation claims fail because she has not suffered any tangible employment action during her tenure with PREPA. *Id.* Plaintiff counters that summary judgment should be denied because: (1) plaintiff established all the elements of a hostile work environment claim; (2) that a reasonable jury could find that PREPA failed to satisfy the two prongs of the *Faragher–Ellerth* defense; and (3) the timing of the escalated harassment, plaintiff's isolation, and her coworkers' aggression, along with requiring her attendance at a compulsory meeting, creates an inference of retaliation or that said conduct was motivated by plaintiff's engagement in a protected activity. **ECF No. 67.** The Court will address each contention in turn.

### A. Title VII—the Faragher–Ellerth Defense

Defendant moves for summary judgement, invoking the *Faragher–Ellerth* defense. **ECF No. 50.** Plaintiff, on the other hand, argues that PREPA's man-

agement did not act reasonably to prevent and respond to plaintiff's complaints of sexual harassment. **ECF No. 67** at 17–19.

Title VII provides a private right of action against any employer who "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has rejected imposing strict liability on an employer for a hostile work environment created by a supervisor when the employer neither knew or reasonably could have known of said conduct. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 70–72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). However, an employer is vicariously liable when a supervisor's conduct creates a hostile work environment for its employees, unless the employer can demonstrate that it is entitled to the *Faragher–Ellerth* defense. *Agusty–Reyes v. Dept. of Educ. of Puerto Rico,* 601 F.3d 45, 53 (1st Cir.2010).

"The *Faragher–Ellerth* defense comprises two necessary elements: '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Pérez–Cordero v. Wal–Mart Puerto Rico, Inc.,* 656 F.3d 19, 30 (1st Cir.2011) (*citing Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

This defense "was designed to protect only those responsible employers who have established effective sexual harassment policies and responsive grievance processes. To that end, an employer must carry its burden on both prongs to succeed in maintaining the defense." *Id.* at 55 (internal citations and quotations omitted). The Court is called upon to assess each prong of the *Faragher–Ellerth* defense independently, recognizing that there may be a relationship between the two. The First Circuit Court of Appeals has stated that "[b]oth prongs involve a judgment call as to reasonableness, which is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." *Id.*

■ As to the first prong, PREPA contends that it has promulgated an antiharassment policy that plaintiff was aware of and even used the same to complain about another supervisor in 2006. The Court agrees. The uncontested evidence shows that, since 1990, PREPA has promulgated a Sexual Harassment Regulation, with an internal grievance procedure to be followed by an employee who is subjected to sexual harassment. On July 5, 2005, PREPA also promulgated an Equal Opportunity in the Employment Policy about Harassment.

Additionally, PREPA provided seminars to plaintiff regarding prevention of sexual harassment. During her first week at PREPA, she attended a training on sexual harassment in the workplace. She received a copy of and training on PREPA's Procedure to Present Administrative Complaints for Employment Discrimination in February of 2008. Therefore, the evidence amply sustains that PREPA met its duty under the first prong of the *Faragher–Ellerth* defense. *Chaloult v. Interstate Brands Corp.,* 540 F.3d 64, 74 (1st Cir. 2008) (noting evidence at summary judgment that employer "had trained its employees regarding its [anti-harassment policies], and that [plaintiff] knew of these policies"); *Reed v. MBNA Marketing Systems, Inc.,* 333 F.3d 27 (2003) (defendant "offered evidence ... both of its own procedures and of efforts to publicize them").

On the second prong, defendant asserts that plaintiff unreasonably failed to take advantage of its procedures. PREPA's argument seems to rely on the premise that an employee only acts reasonably if the employee strictly follows the employer's delineated grievance procedure. Defendant's argument here, however, is misguided. The First Circuit Court of Appeals has made clear that, when a supervisor's behavior is at issue, "an employee need only make reasonable use of the reporting procedures provided by her employers to render the *Faragher–Ellerth* defense unavailable." *Agusty–Reyes,* 601 F.3d at 56; *see also Chaloult,* 540 F.3d at 66.

The uncontested evidence holds that plaintiff did, in fact, complain of her supervisor's conduct twice. First, she contacted Freddyson Martínez, UTIER's Chapter President, and complained of the hostile conduct to him. He, in turn, contacted Ruíz, the area supervisor, and told him they needed to meet. Freddyson Martínez also wrote a letter, requesting that Ruíz conduct a sexual harassment investigation. Thus, a triable issue of fact exists at to whether plaintiff's report of her supervisor's conduct are sufficient to satisfy the employee's duty under *Faragher–Ellerth. Agusty–Reyes,* 601 F.3d at 56 (noting that a jury could easily reject the defendant's "apparent position that no reports of harassment short of formal notice . . . [is] sufficient to satisfy an employee's obligation under *Faragher–Ellerth's* second prong.")

Furthermore, after complaining to Freddyson Martínez, plaintiff filed a complaint at PREPA's Equal Employment Opportunity Office. Consequently, PREPA is unable to cloak itself behind this defense when plaintiff made clear efforts to put her employer on notice regarding the objected conduct[3] Despite defendant's assertions, PREPA has not met its burden as to the second prong of the defense; and, as such, its *Faragher–Ellerth* defense fails. Thus, PREPA's motion for summary judgment on the *Faragher–Ellerth* defense is **DENIED.**

## B. Hostile Work Environment

Next, defendant moves for summary judgment, averring that plaintiff's allegations of sexual harassment do not rise to the level of severity and pervasiveness required to create a hostile work environment. **ECF No. 50.**

Title VII's ban on discriminatory employment practices "extends to sex-based discrimination that creates a hostile or abusive work environment." *Billings v. Town of Grafton,* 515 F.3d 39, 47 (1st Cir.2008) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). However, not all harassing conduct falls under Title VII's purview.

The First Circuit Court of Appeals has established six elements that a plaintiff must prove to succeed in a hostile environment claim: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environ-

3. Although plaintiff claims that her supervisor started a pattern of sexual harassment towards her since 2006, the complaint before this Court centers on incidents that occurred closely before the filing of her administrative complaint in 2009. There is no mention of any specific incidents occurring in 2006 or 2007. Thus, the Court centers its analysis on plaintiff's allegations stemming from the complaint and the events that led her to file her grievance in February of 2009, which, based on the record, started in December of 2008.

ment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *Valentín–Almeyda v. Municipality of Aguadilla,* 447 F.3d 85, 94 (1st Cir.2006) (quoting *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001)).

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment. The environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Vera v. McHugh,* 622 F.3d 17, 26 (1st Cir.2010) (internal citations and quotation marks omitted).

There is no single test by which to determine whether a plaintiff has presented sufficient evidence to survive summary judgment on a sexual harassment claim. *Pomales v. Celulares Telefónica, Inc.,* 447 F.3d 79, 83 (1st Cir.2006). However, in order for a plaintiff to survive summary judgment, courts analyze "all the circumstances," including, but not limited to: "the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating as opposed to a mere offensive utterance, whether it unreasonably interfered with an employee's work performance, and the effect of the conduct on the employee's well-being." *Id.* " 'Subject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 18

(1st Cir.2002) (quoting *Gorski v. N.H. Dep't of Corr.,* 290 F.3d 466, 474 (1st Cir. 2002)).

■ Here, plaintiff's hostile work environment claim stems from her supervisor's repeated requests to go out with him, his insinuations that he wanted to be with her, that she was the woman for him, and that he would always try to accompany her to places in the office, including the bathroom. In December of 2008, plaintiff asserts that Rodríguez also made sexually explicit gestures with his mouth, including tongue movements and biting his lips. Then, on February 4, 2009, as plaintiff was going to the bathroom, Rodríguez asked her to look at a photograph of a naked woman, that plaintiff understood resembled her, straddling a motorcycle, in an open position, with one leg down and the other risen. After the magazine incident, plaintiff became extremely frightened and thought that the next incident would involve Rodríguez touching her or trying to kiss her. The following Friday, plaintiff was alone in the office when Rodríguez asked plaintiff once again for a chance, stating "I want to be with you ... if you were with me, I would make you happy."

The Court notes that the record is unclear as to the frequency and intensity of many of plaintiff's allegations. Although plaintiff recounts Rodríguez' conduct of repeated invitations to go out, insinuations that he wanted to be with her, and that she was the woman for him, nothing points to how often this occurred or whether these events span the entire supervisory relationship from 2006 to 2009. The record reflects that plaintiff felt harassed by Rodríguez since 2006, however, in 2006 she filed a similar complaint against someone else. Plaintiff admits Rodríguez suspended the harassing conduct for some time at the beginning of 2008 due to his friendship with her boyfriend and then resumed also

at some point in December of 2008. Further, the record is unclear whether Rodríguez' sexually explicit mouth gestures were an isolated incident, episodic, or whether they occurred more often. Given the circumstances highlighted above, the Court finds that material issues of fact exist as to the intensity and frequency of the alleged conduct that preclude summary judgment on plaintiff's hostile work environment claim. *See Vera v. McHugh,* 622 F.3d at 29 (holding that genuine issues of material fact existed as to whether frequency and intensity of contact between female employee and supervisor, such as sexual stares, intentional contact of their legs while sharing a small office space for three months, altered her employment conditions).

In addition to the invitations, insinuations and sexual mouth gestures, plaintiff recounts two specific incidents in February of 2009: Rodríguez showing her a picture of a naked woman, that plaintiff felt resembled her, straddling a motorcycle in an open-legged position, followed three days later by Rodríguez telling plaintiff that he wanted to be with her and that if she was with her, he would make her happy. Thus, it could be reasonable for the jury to conclude, based on plaintiff's account of Rodríguez' conduct, that the same was so objectively offensive that a reasonable person would find it hostile or abusive. *Vera v. McHugh,* 622 F.3d at 29 ("... it is one thing to say that employees must learn to tolerate simple teasing, offhand comments, and isolated incidents (unless extremely serious).... It is quite another to require employees to suffer the constant attentions of a lascivious supervisor." (citing *Marrero,* 304 F.3d at 19)). Therefore, the court is unable to conclude, as a matter of law, that Rodríguez' conduct was merely an "ordinary tribulation[ ] of the workplace"

that falls outside Title VII's purview. *Faragher v. City of Boca Ratón,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

As the summary judgement record stands and taking the same in the light most favorable to plaintiff, a reasonable jury could conclude that Morales suffered harassment in the form of a hostile work environment. *See, e.g., Billings,* 515 F.3d at 50 (finding that a supervisor's staring at an employee's breasts whenever the two came in contact over the course of two years constituted a cognizable claim of severe and pervasive harassment); *Marrero,* 304 F.3d at 19–20 (holding that a reasonable jury could conclude that an employee, whose supervisor had made "sexual remarks and innuendos," such as "the redhead is really hot" and "the redhead is on fire," including "a sexual invitation," as well as "unwelcome physical touching" on five occasions in a little over a year had experienced sexual harassment); *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 397–98 (1st Cir.2002) (unwanted touching, complimenting, and following around, culminating in the harasser's breaking into the plaintiff's home and accosting her); *Hernandez–Loring v. Universidad Metropolitana,* 233 F.3d 49, 55–56 (1st Cir.2000) (head of academic committee considering plaintiff's promotion repeatedly asked her for dates and used suggestive language).

In light of the foregoing, defendant's request for summary judgment as to plaintiff's Title VII hostile work environment claims is **DENIED.**

## C. Retaliation

Plaintiff also asserts that PREPA unlawfully retaliated against her for engaging in protected activity, in violation of Title VII.[4] **ECF No. 1.** PREPA moves for

---

**4.** Title VII establishes that it is unlawful "for

an employer to discriminate against any of his

summary judgment, arguing that plaintiff's retaliation claim fails because plaintiff has not suffered an adverse employment action. **ECF No. 50.** The Court agrees with defendant inasmuch as, plaintiff is unable to establish a *prima facie* case of retaliation.

To prove a *prima facie* case of Title VII retaliation, a plaintiff must show that (i) she engaged in protected conduct, (ii) she was thereafter subjected to some materially adverse action, and (iii) a causal connection existed between the protected conduct and the adverse action. *Rivera–Colón v. Mills,* 635 F.3d 9, 12 (1st Cir.2011); *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 181 (1st Cir.2008); *see also Hernández–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 46–47 (1st Cir.1998). "A 'materially adverse' action is one that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pérez–Cordero v. Wal–Mart Puerto Rico, Inc.,* 656 F.3d at 31 (*quoting Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted)). "For a retaliation claim to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *Thompson v. Coca–Cola Co.,* 522 F.3d at 181.

 Here, Morales satisfies the first prong; she engaged in protected conduct. In February of 2009, she complained of Rodríguez' conduct to Martínez and also filed a complaint before PREPA's Equal Employment Opportunity office. However, Morales has not provided evidence of any retaliatory conduct after engaging in the protected conduct. Morales claims to have suffered retaliation through the following: (1) the procedure to inform her of her parking space reassignment; (2) the parking space change did not remedy the situation; (3) she disagreed with the contents of the Minutes of the meetings regarding her complaints; (4) Ruíz confronted plaintiff when she refused to sign the Minutes; (5) Ruíz corroborated plaintiff's allegations with Laboy; (6) she felt incarcerated in her office; (7) the Acosta incident; (8) Rodríguez' crying incident; (9) no confidentiality in the investigation; (10) management did not transfer plaintiff to another position; (11) the EEOO's investigation was tainted; (12) plaintiff felt isolated because she believed nobody wanted to talk to her.

The Court notes that many of the incidents that plaintiff claims as retaliation involve her disagreement or her dissatisfaction with defendant's investigation, procedures, and remedies. Other instances involve one coworker's reaction to the complaint and her perceptions of being secluded or isolated because she felt her coworkers did not want to be with her. These, however, do not amount to a tangible adverse action on PREPA's behalf. "Minor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify." *Morales–Vallellanes v. Potter,* 605 F.3d 27, 36 (1st Cir.2010) (quoting *Burlington Northern,* 548 U.S. at 68, 126 S.Ct. 2405) (finding selective enforcement of lunch and break policy failed to rise to the level of actionable retaliation).

The only action PREPA took was to change her parking space in an attempt to avoid contact with her alleged harasser. Notwithstanding, the terms and conditions of plaintiff's employment remained the

---

employees ... because he has opposed any practice made an unlawful employment practice ..., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

same after she engaged in the protected conduct. The First Circuit Court of Appeals has exemplified adverse employment actions in a retaliation context to "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Morales–Vallellanes v. Potter*, 605 F.3d at 36 (internal citations and quotations omitted). No such actions are found here.

Even considering plaintiff's list of incidents cumulatively, including Ruíz' request that she attend the compulsory meeting, Morales has failed to establish that she suffered any adverse employment action within the meaning of Title VII's anti-retaliation provision. *See Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir.2008) (negative treatment, undesired transfer to another department, undesirable break schedule, and assignment of more arduous and dirty jobs are not adverse employment actions in the retaliation context). Further, she has not shown that any action was taken to retaliate against her. *Mariani–Colón v. Department of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir.2007) ("a plaintiff must make a colorable showing that an adverse action was taken "for the purpose of retaliating" against him.")

In fact, after filing her grievances, plaintiff received salary increases. In addition, plaintiff applied for a transfer and PREPA granted her the requested transfer. The record is simply devoid of any evidence that plaintiff suffered an adverse action at the hands of her employer after complaining of her supervisor's conduct. *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir.2011) ("To succeed on a retaliation claim, a plaintiff must show that her employer took some objectively and materially adverse action against her be-

cause she opposed a practice forbidden by Title VII . . . ."). As such, plaintiff's claim fails since she has not met her burden of establishing a *prima facie* retaliation case. Thus, PREPA's motion for summary judgment as to plaintiff's retaliation claim is **GRANTED.**

### D. Supplemental Jurisdiction

Defendant urges the Court to dismiss plaintiff's Commonwealth claims as well. **ECF No. 50.** However, as highlighted above, plaintiff has a triable Title VII hostile work environment claim that survives summary judgment. Since plaintiff's Commonwealth claims spring from the same nucleus of operative facts, the court finds that the federal and Commonwealth claims are part of the same case or controversy for the purposes of 28 U.S.C. § 1367. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 833 (1st Cir.1997) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts.") (citations omitted). Thus, defendant's request that the Court dismiss all plaintiff's supplemental Commonwealth claims is **DENIED.**

### IV. Conclusion

Based upon the foregoing, defendant's motion for summary judgment (**ECF No. 50**) is **GRANTED IN PART** and **DENIED IN PART.** Summary judgment is **GRANTED** as to plaintiff's Title VII retaliation claims. Summary Judgment is **DENIED** as to her Title VII hostile work environment and her Commonwealth law claims.

**SO ORDERED.**